UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| NANNIE BLACKBURN, *et al.* | ) | |
| | ) | |
| Petitioners, | ) | Civil No. 3:20-cv-00046-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MARY NOBLE, in her official capacity as | ) | **&** |
| Secretary of the Kentucky Justice and Public | ) | **ORDER** |
| Safety Cabinet, *et al.*, | ) | |
| | ) | |
| Respondents. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Petitioners Nannie Blackburn, April Hoover, Allison Moseley, Jessica Tucker, Jeracho Walls, Amanda White, and Hollie Workman (collectively "Petitioners"), a group of Kentucky state inmates all currently confined at the Kentucky Correctional Institution for Women (KCIW), by counsel, have filed an emergency petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  [R. 1.][1]  Petitioners claim that, in light of their individual vulnerabilities and exceptional risks posed to them by the current COVID-19 pandemic and an emerging COVID-19 outbreak at KCIW, their continued incarceration at KCIW (where they are unable to practice isolation and social distancing) constitutes deliberate indifference to a substantial risk of serious harm.  *Id*.  Thus, Petitioners allege that Respondents are holding Petitioners in custody in violation of the Eighth Amendment and request that the Court issue a writ of habeas corpus requiring

---

1 Although Petitioners originally filed their petition in the United States District Court for the Western District of Kentucky, a habeas petition must be filed in the district court where the prisoner is incarcerated.  *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).  Because KCIW is located in Shelby County, which is in this judicial district, *see* 28 U.S.C. § 97(a); LR 3.1(a)(2)(A), the Western District Court transferred the petition to this Court.  [R. 4.]

Respondents to immediately release Petitioners or transfer them to home confinement. *Id*. For the reasons set forth below, the Court will **DISMISS** Petitioners' Emergency Habeas Petition.

**I**

For the past several months, the world has been collectively fighting against a global pandemic. As the Sixth Circuit recently explained, "[t]he COVID-19 virus is highly infectious and can be transmitted easily from person to person." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. *Id*. If contracted, COVID-19 can cause severe complications or death. *Id*. "Because there is no current vaccine, the Centers for Disease Control and Prevention (CDC) recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Id.*

KCIW is an adult female prison in Shelby County, Kentucky, designed to house 733 inmates. [R. 29 at 24.] It is "considered a multi-custody facility as differential housing and programming must meet the needs of female offenders serving one year to life, death row, maximum, medium, minimum, community custody, first offenders, persistent offenders, the disabled and special needs inmates."[2] The institution is a campus style setting with multiple housing units, double and single-bunked. *Id*. Petitioners Jeracho Walls, Hollie Workman, Nannie Blackburn, and April Hoover live in the minimum security unit, which is a building outside the main prison that houses 44 women on two floors. [R. 30 at 13.] These specific petitioners are four of the 18 incarcerated women who live in two-person cells on the upper floor

---

2 *KY Correctional Institution for Women*, Commonwealth of Kentucky Department of Corrections, https://corrections.ky.gov/Facilities/AI/KCIW/Pages/default.aspx.

of the unit. *Id*. at 84.  Petitioner Walls stated that the cells contain two beds about four feet apart, lockers, a TV stand, and a fan. *Id*. at 14.  The 18 women on the upper floor share one working shower and two working toilets. *Id*.  Petitioners Mosely and Tucker currently live in the Ridgeview Dorm, which houses 42 people on two floors. *Id*. at 45.  Each floor has three bathroom stalls, and everyone in that wing must share two showers. *Id*.  Petitioner White lives in a two-person cell in the Program Building, a wing of the prison that houses more than 40 people. *Id*. at 70.

Petitioners in this case consist of seven women who suffer from serious underlying medical conditions that make them particularly susceptible to serious illness or death if they develop COVID-19. [R. 14 at 2.]  First, Petitioner Blackburn is a cervical cancer survivor with high blood pressure, an underactive thyroid, and Hepatitis C.  [R. 1 at ¶ 18.]  Petitioner Hoover is listed on the chronic care list at KCIW since she suffers from severe heart disease, as well as high blood pressure and high cholesterol. *Id*. at ¶ 19.  Petitioner Mosely suffers from cystic fibrosis in her lungs and digestive system, and her condition has further deteriorated since KCIW no longer provides her with daily albuterol treatments. *Id*. at ¶ 20. Petitioner Jessica Tucker's underlying medical conditions center around her positive diagnosis of HIV. *Id*. at ¶ 21. Petitioner Walls suffers from a genetic heart disease called left ventricular noncompaction, as she has a pacemaker and defibrillator that keeps her heart functioning. *Id*. at ¶ 22.  Petitioner White has stage four kidney failure and is also HIV-positive. *Id*. at ¶ 23.  Finally, Petitioner Workman has been diagnosed with hepatitis-C, high blood pressure, COPD, and asthma. *Id*. at ¶ 24.

Respondents assert that the Kentucky Department of Corrections (KDOC) has been taking preventative steps to prevent the introduction of COVID-19 into its facilities and to contain any infection.  [R. 13 at 2.]  For example, KDOC has suspended visitation by friends and

family at all KDOC facilities and programming outside of the facility to limit inmate contact. *Id.* KDOC also suspended transfers between facilities except in operational or medical necessity circumstances, in which the transferred inmate must quarantine 14 days thereafter. *Id.* at 2–3. Respondents also assert that KDOC has provided staff with hand sanitizer and inmates with additional soap. *Id.* at 3. Anyone entering the facility, including staff, are screened for fever and asked health related questions to identify anyone with known COVID-19 symptoms and contacts. *Id.* In addition, KDOC has distributed masks to staff and inmates. *Id.* Finally, KDOC has been consulting with the Kentucky Department of Public Health, including an epidemiologist, for guidance in managing its prevention and treatment of COVID-19. *Id.*

Despite these efforts, KCIW identified its first COVID-19 case after a contract medical worker tested positive on May 20, 2020. *Id.* On June 1, a correctional officer tested positive and on June 3, a food service worker was confirmed to be infected, as well. *Id.* Contact tracing and testing revealed no additional cases during those times. *Id.* However, on June 10, KCIW first indicated infection amongst inmates, when multiple inmates in a single unit complained of COVID-19 symptoms. *Id.* All 26 inmates residing in that unit were immediately placed under quarantine and tested. *Id.* After KDOC tested those inmates, they received the results on June 11 that confirmed 11 positive cases. *Id.* Thereafter, the facility was placed in lockdown and all inmates and staff were tested. *Id.* Subsequent testing of the entire inmate population (639 inmates) confirmed 65 cases of COVID-19. *Id.* As of July 6, the KDOC reported that 159 women incarcerated at KCIW had tested positive for COVID-19 [R. 15], and as of July 28, 234 inmates at KCIW had tested positive.[3]

---

3 *COVID-19 Response*, Commonwealth of Kentucky Department of Corrections, https://corrections.ky.gov/Facilities/Pages/covid19.aspx.

Petitioners contend the KDOC's approach and procedures are limited in effectiveness due to the dormitory-style housing at KCIW making it impossible to maintain physical distance and because there are insufficient supplies. [R. 14 at 11–12.] Inmates and staff were issued masks but Petitioners allege that Respondents have failed to ensure that everyone wears them. [R. 1 at ¶ 47.] Petitioners also aver that Respondents have failed to ensure that high-touch surfaces are frequently cleaned and disinfected. *Id*. at ¶ 48. There are few shower and bathroom facilities, so inmates are in close proximity to each other when they use those facilities. *Id*. Further, Petitioners state that inmates have not been provided adequate soap and water or alcohol-based hand sanitizer to allow for frequent hand washing. *Id*. at ¶ 49. Additionally, inmates are unable to physically distance when moving within the facility to pick up meals, use phones, or move within the housing unit itself, including their dorms and common areas. *Id*. at ¶50.

Petitioners all have serious medical conditions, as previously discussed, that make them especially vulnerable to serious illness or death should they become infected with COVID-19. *Id*. at ¶ 57. Thus, Petitioners allege that their confinement in the midst of the COVID-19 outbreak violates the Eighth Amendment. *Id*. at ¶ 59. Specifically, Petitioners claim that "no conditions or set of conditions exist which mitigate the risk posed to Petitioners by the growing COVID-19 outbreak at KCIW. Petitioners' exceptional vulnerability to COVID-19 means that the only way they can protect themselves from the virus is to never become exposed to it in the first place—a precaution that can only be accomplished by isolation at home, safely removed from congregate environments." *Id*. at ¶ 58.

In light of the initial screening required by 28 U.S.C. § 2243, the Court concluded that the petition warranted a response and further elaboration from the parties. [R. 8.] Thus, the Court ordered Respondents to file a response within 10 days addressing the factual allegations and

5

legal claims contained in the petition and allowed Petitioners to file a reply in further support of their petition within five days after Respondents filed their response. *Id.* Given the urgent nature of the case, the Court held an oral argument hearing on July 14, where witnesses Warden Vanessa Kennedy and Dr. Joe Goldenson, M.D. testified. [R. 21.] Due to technical issues presented, the Court held a second evidentiary hearing on July 21 so that Petitioners Wells, Moseley, White, and Workman were able to testify to the Court via videoconference. [R. 26.] Thereafter, the Court allowed supplemental briefing in regard to the testimony and arguments presented at the hearings. *Id.* Thus, the Court finds sufficient evidence to rule on the petition, as the parties have thoroughly briefed the issues and presented oral argument to the Court.

## II

This is a habeas corpus action brought by state prisoners purportedly under 28 U.S.C. § 2241. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court will dismiss the petition for the following reasons.

**A**

Petitioners' request for relief is not a typical habeas petition. But the Supreme Court has made clear that constitutional challenges to the fact or duration of confinement are the proper subject of a habeas corpus petition. *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973). Thus, Petitioners' claims are properly brought under 28 U.S.C. § 2241 because they challenge the fact or extent of their confinement by seeking release from custody. [R. 1 at ¶ 32.] Such relief Petitioners seek is available only upon habeas corpus review. "The Supreme Court has held that release from confinement—the remedy petitioners seek here—is 'the heart of habeas corpus.'" *Wilson,* 961 F.3d at 868 (quoting *Preiser,* 411 U.S. at 498). A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser*, 411 U.S. at 484 (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Undoubtedly, for that reason, Petitioners have sought habeas relief.

The seven individual Petitioners seek release, not because the conditions of their confinement fail to prevent irreparable constitutional injury, but based on the fact of their confinement. [*See* R. 1 at ¶ 58.] "Where a petition claims no set of conditions would be constitutionally sufficient, [the Sixth Circuit] construes the petitioner's claim as challenging the fact of the confinement." *Wilson*, 961 F.3d at 838 (citing *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011)); *see also Malam v. Adducci*, 2020 WL 1672662, at *3 (E.D. Mich. Apr. 5, 2020) (finding § 2241 to be a proper avenue for the plaintiff to seek "immediate release from confinement as a result of there being no conditions of confinement sufficient to prevent irreparable constitutional injury under the facts of her case"). For these reasons, the Court

concludes that § 2241 is the proper vehicle for Petitioners to challenge their continued confinement during the COVID-19 pandemic.

Petitioners' decision to pursue habeas relief, however, circumscribes the relief available. *Wilson*, 961 F.3d at 837. Even if there might be conditions of confinement, short of release, that would mitigate the risk—and eliminate the cruel or unusual character of the punishment—it is not within this Court's habeas jurisdiction to grant such relief. *Id*. A claim seeking relief other than release is properly brought under 42 U.S.C. § 1983. *Id*.

**B**

Before the Court may grant habeas relief to a state prisoner, a prisoner must exhaust remedies available in the state courts except in unusual circumstances. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The Sixth Circuit has expressly held that the exhaustion doctrine applies to § 2241 petitions. *See Little v. Hopkins*, 638 F.2d 953, 954 (6th Cir. 1981). The Supreme Court has provided that the exhaustion requirement will be waived "'in rare cases where exceptional circumstances of peculiar urgency are shown to exist.'" *Rose v. Lundy*, 455 U.S. 509, 515–16 (1982) (quoting *Ex parte Hawk*, 321 U.S. 114, 117, (1944)). The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen,* 424 F.2d at 138–39. Petitioners bear the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioners have neither alleged that they exhausted their claims in the state courts nor have they provided any documentation indicating that they have pursued any state remedies. In fact, they are silent on this issue and did not state their position to the Court.

8

"The requirement that a habeas petitioner exhaust state-court remedies before seeking relief in federal court 'protect[s] the state court's opportunity to confront initially and resolve constitutional issues arising within their jurisdictions and to limit federal judicial interference in state adjudicatory processes." *Atkins v. People of State of Mich.*, 644 F.2d 543, 546 (6th Cir. 1981)). However, only *available* state remedies must be exhausted before seeking federal habeas relief. Exhaustion is not required where a remedy in state court is "unavailable" *O'Sullivan,* 526 U.S. at 847–848, or where the remedy is "inadequate or cannot provide the relief requested," *Goar v. Civiletti*, 688 F.2d 27, 28–29 (6th Cir. 1982) (citations omitted). The Supreme Court has "held that state prisoners do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past." *O'Sullivan*, 526 U.S. at 844 (citation omitted).

Respondents provided the Court with the applicable Kentucky Corrections Policies and Procedures with respect to inmate grievance procedures. KDOC has two internal administrative process in place in which inmates may file a "grievance" pertaining to a health care situation. [R. 32-2.] *See* Kentucky Corrections Policy No. 14.6. The first process is for grievances "involving unfair or discriminatory treatment, safety, or sanitation in medical, dental or mental health care services." *Id.* at 7. The second process applies to grievances "involving access to or the quality of these [medical] services." *Id.* Both processes involve a review or hearing with KDOC officials, and appeals are available. *Id.* at 7–18. However, these processes do not seem to apply to the relief that Petitioners request, which is release.

Though, Petitioners may still have at least one available procedure by which to raise the issues they have presented to this Court. As noted by other districts in the Sixth Circuit, to

9

properly exhaust their claims, Petitioners could file a motion in the proper circuit court seeking relief from the order detaining them. *Evil v. Whitmer*, 2020 WL 1933685 at *4 (W.D. Mich. Apr. 22, 2020). If the motion is denied by the circuit court, Petitioners should pursue available appeals of that decision. *Id*. Kentucky statutes state that habeas corpus is an appropriate remedy for one held in custody in violation of the Constitution. KRS § 202A.151. However, there is no evidence that Petitioners have pursued their requested relief through any state forum.

But even if these state remedies were available to Plaintiffs to seek the relief sought here, the failure to exhaust does not divest this Court of jurisdiction over their petition. *Rockwell v. Yukins*, 217 F.3d 421, 423 (6th Cir. 2000). A federal habeas court may consider unexhausted claims where "'unusual' or 'exceptional' circumstances" exist. *Id.* (quoting *O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6th Cir. 1996) (citing *Granberry v. Greer*, 481 U.S. 129 (1987))). As other Courts have observed, the current pandemic is an unusual or exceptional circumstance that could allow a federal court to consider the matter at hand. *Cameron v. Bouchard*, 2020 WL 2569868, at * 15 (E.D. Mich. May 21, 2020).

## C

Prison officials must guarantee the safety of and provide adequate medical care to inmates. The Eighth Amendment's prohibition against cruel and unusual punishment establishes this obligation as it relates to convicted inmates. *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). To succeed on an Eighth Amendment claim for deliberate indifference to serious medical needs, a plaintiff must prove more than mere negligence on behalf of prison authorities. *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994); *see also Estelle*, 429 U.S. at 106. Instead, a prison official will be liable only when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer*

*v. Brennan*, 511 U.S. 825, 837 (1994). Put another way, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. To show "deliberate indifference," a plaintiff must satisfy an objective and subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

### 1

To satisfy the objective component, inmates must demonstrate that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *see also Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016) (quoting *Amick v. Ohio Dep't of Rehab. & Corr.*, 521 F. App'x 354, 361 (6th Cir. 2013)) (explaining that a plaintiff satisfies "the objective component by showing that, 'absent reasonable precautions, an inmate is exposed to a substantial risk of serious harm'"). Thus, the Court must ask whether Petitioners have "provided evidence that they are 'incarceated under conditions posing a substantial risk of serious harm." *Wilson*, 961 F.3d at 840 (quoting *Farmer*, 511 U.S. at 834).

It is clear that Petitioners face a substantial risk of serious harm from contracting COVID-19. In fact, Respondents agree that "[t]he spread of COVID-19 is indeed serious and poses a risk to everyone." [R. 13 at 6.] However, Respondents argue that "[t]he risk faced by the Petitioners is one of degree, not kind." *Id*. at 6–7. Petitioners have provided evidence through expert testimony that reveals Petitioners' serious underlying medical conditions make it more likely that they will experience serious illness should they contract the virus. [R. 14 at 8.] As a result of contracting COVID-19, Petitioners face a higher possibility of serious consequential effects such as hospitalization, treatment in intensive care, the use of specialized equipment like ventilators, long-term effects, and even death. *Id*.

Moreover, the rapidly increasing infection rates at KCIW have borne out the serious risk of COVID-19, despite the KDOC's continued efforts. "The transmissibility of the COVID-19 virus in conjunction with [KCIW]'s dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable [Petitioners'] health risks, presents a substantial risk that petitioners at [KCIW] will be infected with COVID-19 and have serious health effects as a result, including, and up to, death." *Wilson*, 961 F.3d at 840. Thus, Petitioners have put forth sufficient evidence that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

**2**

"To satisfy the subjective component, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Id*. at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id*. at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844.

Based on the evidence presented, it is evident that Respondents are aware of and understand the potential risk of serious harm to Petitioners through exposure to the COVID-19 virus. It is also evident that Respondents have taken numerous precautions to address the particular risks faced by individuals detained at KCIW. The measures outlined by Respondents (including screening and isolating new detainees for 14 days, increasing sanitation measures, restricting visitors, screening staff, distributing cloth masks to staff and inmates, and increased

12

testing) are substantially similar to the screening and prevention steps taken by the respondents in both *Cameron* and *Wilson*. In both cases, the Sixth Circuit found that respondents had responded reasonably to address the risks posed by COVID-19 and petitioners had, therefore, failed to demonstrate that respondents had been deliberately indifferent to their health concerns. *See Cameron v. Bouchard*, 2020 WL 3867393 at * 5–8 (6th Cir July 9, 2020); *Wilson,* 961 F.3d at 841.

Petitioners argue that the measures undertaken by KCIW are insufficient because adequate social distancing is impossible, even with the "controlled containment" strategies currently in place. [R. 14 at 11–12.] As Respondents have acknowledged, there is a "lack of physical distancing," and the "limitations on social distancing are the product of the design of [the] facilities." [R. 13 at 8.] Petitioners emphasize that this proves Respondents have recognized a known risk to Petitioners and have taken no actions to address that risk. [R. 14 at 112.] However, the Court finds Petitioners' arguments unavailing.

The Court finds that the measures taken by Respondents represent a reasonable response to the serious risks posed by COVID-19. After examining Respondents' efforts to overcome the impossibility of social distancing, the Court finds that they "do[ ] their best balancing social distancing and regulation applicable to the facility" so they do not exhibit deliberate indifference, especially when the CDC's own guidance "presupposes that some modification of its social-distancing recommendations will be necessary in institutional settings." *Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. June 15, 2020). As noted above, Respondents have recognized the risks associated with dormitory-style housing and made reasonable efforts to ameliorate that risk by suspending transfers between facilities, isolating all new detainees from the general population for 14 days, placing detainees with COVID-19 symptoms in isolation, and limiting

the number of people in different common areas. [R. 1 at ¶ 44.] While these measures may be imperfect in some respects, Petitioners have not shown that they are unreasonable. Nor have Petitioners sufficiently shown that Respondents have disregarded a known risk or failed to take any steps to address the risk. *See Wilson*, 961 F.3d at 843 ("Here, even if the BOP's response has been inadequate, it has not disregarded a known risk or failed to take any steps to address the risk,..., such that its response falls below the constitutional minimum set by the Eighth Amendment."); *Cameron*, 2020 WL 3867393 at * 6 ("[P]laintiff's argument at most shows that defendant's response was imperfect. That is not enough to establish deliberate indifference.")

      Likewise, the Court rejects Petitioners' arguments that they are entitled to release because detainees eat communal meals and jail staff and inmates allegedly fail to wear masks or properly sanitize the facility. Although conditions in the jail may not be ideal, the measures taken at KCIW are reasonable and substantially similar to the measures taken by prison officials in both *Wilson* and *Cameron*, which the Sixth Circuit found sufficient to pass constitutional muster. Moreover, the fact that COVID-19 has spread among KCIW inmates does not establish that Respondents have the necessary state of mind to satisfy the subjective deliberate indifference prong as to the safety measures implemented to protect inmates from COVID-19. *See Farmer*, 511 U.S. at 844 (the fact that "the harm ultimately was not averted" does not demonstrate deliberate indifference); *Wilson*, 961 F.3d at 841 (finding "while the harm imposed by COVID-19 on inmates at Elkton ultimately [is] not averted, the BOP has responded reasonably to the risk and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights," noting evidence that the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies,

providing mask, and engaging in efforts to expand testing "demonstrate the opposite of a disregard of a serious health risk") (internal quotations and citations omitted).[4]

In sum, the Court finds that Petitioners have failed to demonstrate that Respondents have been deliberately indifferent to their present and future health concerns. By implementing the many measures discussed above, Respondents have recognized and responded reasonably to Petitioners' individual risks associated with COVID-19.

### III

The Court concludes that Petitioners have not provided sufficient evidence to show that Respondents were deliberately indifferent to the serious risk of harm presented to the medically vulnerable Petitioners during the ongoing pandemic. Thus, due to Petitioners' failure to meet the subjective component of the controlling standard, the Court must dismiss Petitioners' emergency habeas petition. Accordingly, and the Court being sufficiently advised, it is **ORDERED** as follows:

---

4 Other circuits have also concluded that similar actions by prison officials demonstrate a reasonable response to the risk posed by COVID-19. *See Valentine v. Collier*, 956 F.3d 797, 802–03 (5th Cir. 2020) (prison officials showed likelihood of success on appeal of preliminary injunction issued by district court required the officials to immediately implement more preventive measures to combat COVID-19 in Texas state prison, reasoning the plaintiffs lacked evidence of the defendants' "subjective deliberate indifference" to the substantial risk of serious harm of COVID-19 and noting "[t]o the contrary, the evidence shows that [Texas Department of Criminal Justice] has taken and continues to take measures— informed by guidance from the CDC and medical professionals—to abate and control the spread of the virus"); *Swain,* 958 F.3d at 1089 (noting the district court incorrectly collapsed the subjective and objective components of the deliberate indifference inquiry for plaintiffs' Eighth Amendment claim and likely erred because (1) resultant harm does not establish a liable state of mind for deliberate indifference but the district court "treated the increase in COVID-19 infections as proof that the defendants deliberately disregarded an intolerable risk"; and (2) "the inability to take a positive action likely does not constitute 'a state of mind more blameworthy than negligence' " required for deliberate indifference but the district court treated defendants' inability to "achieve meaningful social distancing" as evincing a reckless state of mind for the subjective component of plaintiffs' claim despite acknowledging social distancing was "impossible" and "cannot be achieved absent an additional reduction in Metro West's population or some other measure to achieve meaningful social distancing").

1. Petitioners' emergency petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [**R. 1**] is **DISMISSED**;

2. Respondents' Motions to Dismiss [R. 13; 33] are **DENIED AS MOOT**;

3. This action is **DISMISSED** and **STRICKEN** from the Court's docket; and

4. A corresponding Judgment will be entered promptly.

This the 14th day of August, 2020.

Gregory F. Van Tatenhove
United States District Judge